## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

CASE NO. 21-CV-0175

---

IN RE GREENPOINT TACTICAL INCOME FUND LLC and
GP RARE EARTH TRADING ACCOUNT LLC,

*Debtors*,

BALLARD SPAHR LLP,

*Appellant*,

v.

OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS, ET AL.,

*Appellee*.

---

*Appeal from the United States Bankruptcy Court for the*
*Eastern District of Wisconsin, Case Nos. 19-29613, 19-29617*

---

### OPENING BRIEF OF APPELLANT BALLARD SPAHR LLP

Dated: April 15, 2021        **BALLARD SPAHR LLP**

By: /s/ *Michael R. McDonald*

Michael R. McDonald
1735 Market Street, 51st Floor
Philadelphia, PA 19147
Telephone: 215-665-8500
Fax: 215-864-8999
McDonaldM@ballardspahr.com

Karla M. Vehrs, Esq.
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402-2119
Telephone: 612-371-2449
Fax: 612-371-3207
VehrsK@ballardspahr.com

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION.............................................................................. 1

STATEMENT OF THE ISSUES PRESENTED AND STANDARD OF REVIEW.................... 1

STATEMENT OF THE CASE................................................................................... 2

    I.     Relevant Facts........................................................................................ 2

    II.    Procedural History ................................................................................ 4

ARGUMENT ..................................................................................................... 5

    I.     GTIF's oral promise to pay Ballard's legal fees and expenses, which
          Ballard relied on when providing its legal services, is enforceable........................ 6

          A.    GTIF's promise was not a guaranty of Hull's past debt and
                therefore is not subject to the statute of frauds. .......................................... 7

          B.    The Committee is barred from invoking the statute of frauds in any
                event on grounds of promissory estoppel. ............................................... 10

    II.    Hull is also entitled to indemnification for his legal fees and expenses
          from GTIF under Wisconsin law and under similar provisions of the
          Operating Agreement........................................................................... 13

    III.   The Bankruptcy Court improperly decided disputed issues of material fact
          that should instead be resolved at trial. .................................................. 17

CONCLUSION.................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................17

*Baker v. Lindgren*,
856 F.3d 498 (7th Cir. 2017) ..............................................11

*Barry Healthcare Servs. v. Eisenberg*,
No. 00-0783, 2001 Wisc. App. LEXIS 381, 244 Wis. 2d 285, 628 N.W.2d 438
(Wis. Ct. App. Apr. 17, 2001).................................................7, 8, 9, 10

*Brennan, Steil, Basting & MacDougall v. Colby*,
189 Wis. 2d 344, 525 N.W.2d 273 (Wis. Ct. App. 1994)...................8, 9

*Estate of Carman v. Tinkes*,
762 F.3d 565 (7th Cir. 2014) ..............................................19

*Carroll v. Lynch*,
698 F.3d 561 (7th Cir. 2012) ..............................................5

*Champine v. Milwaukee Cty.*,
2005 WI App 75, 280 Wis. 2d 603, 696 N.W.2d 245 (Wis. Ct. App. 2005)...........10

*Champion v. Doty*,
31 Wis. 190 (1872) .............................................................8

*Cook & Franke, S.C. v. Meilman*,
136 Wis. 2d 434, 402 N.W.2d 361 (Wis. Ct. App. 1987)........................9

*Data Key Partners v. Permira Advisers LLC*,
2014 WI 86, 356 Wis. 2d 665, 849 N.W.2d 693 (Wis. 2014) ................14

*Dresser Indus., Inc. v. Pyrrhus AG*,
936 F.2d 921 (7th Cir. 1991) ..............................................12

*Eden Stone Co. v. Oakfield Stone Co.*,
166 Wis. 2d 105, 479 N.W.2d 557 (Wis. Ct. App. 1991).....................16

*Emp'rs Health Ins. v. Gen. Cas. Co.*,
161 Wis. 2d 937, 469 N.W.2d 172 (Wis. 1991) ..........................17

*In re Estate of Voss*,
20 Wis. 2d 238, 121 N.W.2d 744 (Wis. 1963) ..........................11

*Fletcher v. A. J. Indus., Inc.*,
266 Cal. App. 2d 313 (Cal. Ct. App. 1968) ............................................................16

*Great Revers FS Coop. v. Backman*,
No. 82-025, 1982 Wisc. App. LEXIS 4221, 109 Wis. 2d 697, 327 N.W.2d 723
(Wis. Ct. App. Nov. 17, 1982) ...................................................................8, 9, 19

*Isermann v. MBL Life Assur. Corp.*,
231 Wis. 2d 136, 605 N.W.2d 210 (Wis. Ct. App. 1999)........................................16

*Kalal v. Cir. Ct. for Dane Cty.*,
2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110 (Wis. 2004) ................................15

*Klein v. Kelly*,
No. 79-068, 1980 Wisc. App. LEXIS 3494, 95 Wis. 2d 733, 289 N.W.2d 374
(Wis. Ct. App. Jan. 15, 1980) .................................................................................12

*Estate of Kriefall v. Sizzler U.S. Franchise, Inc.*,
2012 WI 70, 342 Wis. 2d 29, 816 N.W.2d 853 (Wis. 2012) ................................16

*Lakeside Foods, Inc. v. Liberty Mut. Fire Ins. Co.*,
No. 2009AP1428, 2010 Wisc. App. LEXIS 562, 2010 WI App 120, 329 Wis.
2d 270, 789 N.W.2d 754 (Wis. Ct. App. July 21, 2010) ........................................19

*Mann v. Erie Mfg. Co.*,
19 Wis. 2d 455, 120 N.W.2d 711 (Wis. 1963) ...........................................7, 8, 9, 19

*Nelson v. Mauer*,
Nos. 81-627, 81-630, 1982 Wisc. App. LEXIS 3488, 107 Wis. 2d 738, 321
N.W.2d 363 (Wis. Ct. App. Apr. 13, 1982) ...............................................................8

*Payne v. Pauley*,
337 F.3d 767 (7th Cir. 2003) ...........................................................................5, 19

*R. S. Bennett & Co. v. Econ. Mech. Indus., Inc.*,
606 F.2d 182 (7th Cir. 1979) ................................................................................20

*Rohler v. TRW, Inc.*,
576 F.2d 1260 (7th Cir. 1978) ...............................................................................12

*Smith v. Capital One Bank (USA) N.A.*,
545 B.R. 249 (E.D. Wis. 2016)...............................................................................15

*Smith v. Doyle*,
No. 84-743, 1985 Wisc. App. LEXIS 3914, 127 Wis. 2d 565, 379 N.W.2d 901
(Wis. Ct. App. Nov. 12, 1985).................................................................................9

*Stifel Fin. Corp. v. Cochran*,
    809 A.2d 555 (Del. 2002) ......................................................15

*Toulon v. Nagle*,
    67 Wis. 2d 233, 226 N.W.2d 480 (Wis. 1975) ......................10

*U.S. Oil Co. v. Midwest Auto Care Servs., Inc.*,
    150 Wis. 2d 80, 440 N.W.2d 825 (Wis. Ct. App. 1989)...............11, 19

*Van Dyn Hoven v. Bank of Kaukauna*,
    470 B.R. 822 (E.D. Wis. 2012)...................................................1

*W. Leather Lofts Condo. Ass'n v. Busalacchi*,
    No. 2009AP1451, 2010 Wisc. App. LEXIS 441, 2010 WI App 100, 327 Wis.
    2d 799, 788 N.W.2d 384 (Wis. Ct. App. June 15, 2010)......................19

*Waldridge v. Am. Hoechst Corp.*,
    24 F.3d 918 (7th Cir. 1994) .......................................................6

*Wamser v. Bamberger*,
    101 Wis. 2d 637, 305 N.W.2d 158 (Wis. Ct. App. 1981)......................11

*Whitehead v. AM Int'l*,
    860 F. Supp. 1280 (N.D. Ill. 1994) ...........................................12

*Widmar v. Sun Chem. Corp.*,
    772 F.3d 457 (7th Cir. 2014) ....................................................18

**Statutes**

28 U.S.C. § 158(a) ...............................................................1

28 U.S.C. § 1334..................................................................1

Wis. Stat. § 180.0850.............................................................13

Wis. Stat. § 183.0403(2) ...............................................1, 13, 15, 16

Wis. Stat. § 183.0403(4) ........................................................17

Wis. Stat. § 241.02(1)(b)........................................................7

Wis. Stat. § 632.24..............................................................17

Wis. Stat. § 802.02(3) ..........................................................11

**Other Authorities**

Civil L. R. 7(j)(2)..............................................................7

Fed. R. Civ. P. 8(a)(2) .......................................................................................12

Fed. R. Civ. P. 56(a) .....................................................................................5, 19

Fed. R. Civ. P. 56(c) .........................................................................................1

Fed. R. Bankr. P. 7056 .......................................................................................5

Fed. R. Bankr. P. 9014 .......................................................................................5

## STATEMENT OF JURISDICTION

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. §§ 158(a) and 1334.

## STATEMENT OF THE ISSUES PRESENTED
## AND STANDARD OF REVIEW

This is an appeal of an Order of the Bankruptcy Court granting summary judgment in favor of the Official Committee of Equity Security Holders (the "Committee") on its objection to the claim (the "Claim") of Ballard Spahr LLP ("Ballard") and disallowing that Claim in its entirety. The Bankruptcy Court's summary judgment decision is reviewed *de novo*. *Van Dyn Hoven v. Bank of Kaukauna*, 470 B.R. 822, 825 (E.D. Wis. 2012) (citations omitted). A District Court will not affirm a grant of summary judgment unless "there are no genuine issues as to any material facts and . . . the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)).

Ballard's Claim arose from legal services rendered to Michael Hull ("Hull") in connection with certain governmental investigations and private arbitrations relating to his service as an executive of Greenpoint Tactical Income Fund LLC ("GTIF"), one of the Debtors. Ballard asserts a right to payment from GTIF of the resulting fees and expenses on several grounds: (a) the provisions of Section 183.0403(2) of the Wisconsin Statutes, which requires Wisconsin limited liability corporations to indemnify their managers for legal fees they may incur in connection with matters relating to their work for the LLC, and similar provisions in GTIF's Operating Agreement (the "Operating Agreement"); and (b) GTIF's oral agreement to pay Ballard's fees, coupled with GTIF's consistent practice pre-bankruptcy of paying such fees, and Ballard's reasonable reliance on GTIF's promise. The following issues are presented on appeal:

1.  Whether the Bankruptcy Court erred in holding that Ballard's claim of an oral agreement was barred by the Wisconsin statute of frauds, even though GTIF's agreement to pay such fees was not a guaranty within the contemplation of the statute of frauds?

*Suggested Answer: Yes*

2. Whether the Bankruptcy Court erred in finding that Ballard waived its promissory estoppel defense to the statute of frauds, even though Ballard Spahr raised that defense before the Bankruptcy Court in response to the Committee's motion for summary judgment and the defense is supported by the record?

*Suggested Answer: Yes.*

3. Whether the Bankruptcy Court erred in holding that the indemnification provisions of Wisconsin law and similar provisions in GTIF's Operating Agreement did not apply to Hull because he was not a "manager" of GTIF, even though he performed the duties of GTIF's manager?

*Suggested Answer: Yes.*

4. Whether the Bankruptcy Court erred in ruling there was no genuine issue of material fact with respect to Ballard's Claim?

*Suggested Answer: Yes.*

## STATEMENT OF THE CASE

### I.     Relevant Facts

Despite a significant cast of supporting characters, this case—about the Claim of Ballard against GTIF—concerns only three related individuals and entities. Michael Hull was managing director of, and controlled, Greenpoint Asset Management II LLC ("GAM"), which in turn was one of the two managing members of GTIF. (Resp. of Ballard Spahr ¶ 1, App. 0223; Operating Agreement § 6.2, App. 0405.) As a managing member, GAM had the authority to "[r]etain attorneys . . . in the course of performing" its duties and exercising its powers, which included to "initiate, prosecute, defend, settle lawsuits and confess judgments against" GTIF. (Operating Agreement § 6.4(a), App. 0405.)

On August 2, 2017, Hull engaged Ballard to represent him in connection with an investigation by the Securities and Exchange Commission and, eventually, the United States Department of Justice, into possible securities law violations "related to [GTIF]" with respect to

"the solicitation of investments in and the operation of GTIF" and other funds. (Statement of Claim ¶¶ 4–5, App. 0393; App. 0427.) The subjects of the investigations were Hull, GAM, GTIF, and several related individuals and entities, including Chrysalis Financial LLC ("Chrysalis"), the other managing member of GTIF, and Christopher Nohl ("Nohl"), Chrysalis's authorized agent, as well as Bluepoint Investment Counsel LLC ("Bluepoint"), an investment advisory firm owned and operated by Hull. (Statement of Claim ¶ 4, App. 0393.)

In January 2018, Ballard's engagement expanded to represent Hull in connection with arbitrations commenced against GTIF and related persons (including Hull and GAM) by GTIF investors. (Statement of Claim ¶¶ 6–7, App. 0393–94; App. 0434.) Hull and Nohl were "sued in the Arbitrations in their capacity as representatives of [GAM II and Chrysalis]." (Comm. Omnibus Reply ¶ 29, App. 0236; App. 0507–608.)

At the time of Ballard's engagement, GTIF orally promised to pay the legal fees and expenses arising from the services Ballard was to render to Hull in connection with the investigations and arbitrations (the "Agreement"). (Axelrod Decl. ¶ 10, App. 0718.) That promise was not conditional, and Ballard would not have undertaken the engagement without the assurance of payment from GTIF. (*Id.*) Such an agreement of a corporation to pay the legal fees and expenses incurred by its executives in connection with proceedings arising out of their service for the corporation is common and routine. (Axelrod Decl. ¶ 11, App. 0718.)

Ballard diligently represented the interests of Hull—and GAM and GTIF—during the investigations and arbitration proceedings. In the arbitrations, for example, on behalf of and to the benefit of all respondents, Ballard managed document discovery, supervised the expert witness, led depositions, drafted the majority of the pre-trial briefing, and managed settlement negotiations. (*See, e.g.*, Statement of Claim ¶ 8, App. 0394; Axelrod Decl. ¶¶ 4–9, App. 0717.) In performing

these services, Ballard acted in reasonable reliance on the Agreement. (Axelrod Decl. ¶ 12, App. 0718.) The arbitrations settled with no finding of liability and no admissions of wrongdoing on the part of Hull or any of the other parties. (Axelrod Decl. ¶ 15, App. 0718.) Similarly, the investigations have resulted in no finding of or judgment for liability for any wrongdoing to date. (*Id.*)

In accordance with the Agreement, GTIF paid ten of Ballard's invoices. (*See* Axelrod Decl. ¶ 13, App. 0718; App. 0834–36.) There remain, however, $236,717.73 in unpaid bills, which GTIF acknowledged owing (in the slightly reduced amount of $230,000) in the schedules it filed in its bankruptcy case. (*See* Statement of Claim ¶ 11, App. 0394; App. 0446.)

## II.    Procedural History

GTIF filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 4, 2019 in the United States Bankruptcy Court for the Eastern District of Wisconsin. On December 5, 2019, the United States Trustee appointed the Committee to represent the interests of equity security holders in the bankruptcy.

Ballard timely filed Claim No. 98 against GTIF on February 6, 2020, seeking $236,717.73 for outstanding legal fees and expenses. (App. 0136.) On September 9, 2020, the Committee filed an objection to Ballard's Claim, seeking its disallowance (the "Objection"). (App. 0142.) At a preliminary hearing, the Bankruptcy Court instructed Ballard to prepare a Statement of Claim setting forth the bases for its entitlement to the outstanding fees and expenses, which Ballard filed on November 16, 2020. (App. 0263; App. 0392.) On December 1, 2020, the Committee filed a motion for summary judgment on its Objection, requesting disallowance of the Claim, in its entirety, without a trial. (*See* App. 0458–59.) The Bankruptcy Court heard argument on January 15, 2021, and then on January 29, 2021, issued from the bench its decision indicating it would grant summary judgment (*See* App. 0909–31; App. 0999–1029.) On February 2, 2021, the

Bankruptcy Court entered its Order granting summary judgment and disallowing the Claim. (App. 1066.) Ballard filed a timely notice of appeal on February 26, 2021. (App. 1068.)

## ARGUMENT

The overriding issue in this appeal is whether the Bankruptcy Court erred in granting summary judgment against Ballard, even though Ballard's evidence in support of the Claim was substantial and uncontradicted. With respect to the Agreement in particular, instead of viewing the record in the light most favorable to Ballard, as required, the Bankruptcy Court inventoried reasons why, in the court's view, the evidence lacked credibility, required inference, or was missing information that the court would have preferred to be included.

This is not what summary judgment envisions or allows. To prevail on a motion for summary judgment, the moving party has the burden to show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] This well-established standard limits the court's discretion in deciding the motion. The court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Rather, the court is constrained to viewing "all facts and inferences in favor of the nonmoving party." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). In doing so, it must "avoid[] the temptation to decide which party's version of the facts is more likely true"— summary judgment is not a process for "resolv[ing] swearing contests between litigants." *Payne*, 337 F.3d at 770 (citations omitted). The burden of the non-moving party is not to "persuade the court that [its] case is convincing," but

---

[1] Rule 56 is made applicable these Bankruptcy proceedings by Rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure.

only that there is "appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

The Bankruptcy Court strayed from this narrow task, crediting the Committee's unsupported arguments, rejecting Ballard's concrete evidence, and ruling against Ballard as a matter of law. But the record contains direct evidence supporting Ballard's entitlement to relief on multiple grounds, which, at the very least, creates numerous material issues of fact that were inappropriate for resolution at this stage. The Bankruptcy Court erred, and this Court should reverse the decision.

## I.      GTIF's oral promise to pay Ballard's legal fees and expenses, which Ballard relied on when providing its legal services, is enforceable.

GTIF's Agreement to pay Ballard in exchange for Ballard's legal work was a straightforward, binding contract; uncontroversial tenets of contract law entitle Ballard to payment of the unpaid fees from GTIF. The Committee, however, argued that summary judgment nonetheless was warranted because the Agreement was unenforceable under the Wisconsin statute of frauds as a guaranty of the obligation of another. (Comm. Summ. J. Br. at 12–14, App. 0471–73.) Construing all of the record evidence against Ballard (rather than in the light most favorable to Ballard), the Bankruptcy Court agreed, holding that GTIF's Agreement was merely a guaranty of Hull's debts to Ballard, and not the undertaking of a direct obligation to pay for services rendered to a third party. Yet the uncontroverted record shows that GTIF agreed to pay Ballard directly for its legal services *regardless of whether* Hull first defaulted on his own promise to pay. An oral agreement that fits this long-established distinction is not subject to the statute of frauds. Accordingly, the statute is inapposite here.

Even were the statute of frauds applicable, the Committee should be estopped from invoking it because Ballard reasonably relied on GTIF's promise to pay and suffered harm as a

result of GTIF's failure to do so. Accordingly, regardless of whether the statue of frauds applies to GTIF's Agreement, Ballard is entitled to its Claim.

### A. GTIF's promise was not a guaranty of Hull's past debt and therefore is not subject to the statute of frauds.

GTIF's Agreement to pay the fees and expenses for Ballard's legal services was not contingent on Hull's failure first to pay his own legal fees. The statute of frauds only requires an agreement to be in writing if it is a promise to guaranty satisfaction of a third party debt upon the third party's default, not if it is an original undertaking to pay services rendered to another. Here, the uncontradicted evidence is that GTIF's agreement to pay Ballard's fees was not a guaranty of an existing debt, but an original undertaking. Accordingly, the statute of frauds does not apply.

Under the Wisconsin statute of frauds, an agreement "to answer for the debt, default, or miscarriage of another" must be in writing in order to be enforceable. Wis. Stat. § 241.02(1)(b). The statute does not apply, however, to unconditional promises that amount to an "original undertaking" to pay for services rendered to a third party. *Mann v. Erie Mfg. Co.*, 19 Wis. 2d 455, 459, 120 N.W.2d 711, 714 (Wis. 1963). Courts have recognized this distinction "[f]or more than one hundred and twenty-five years." *Barry Healthcare Servs. v. Eisenberg*, No. 00-0783, 2001 Wisc. App. LEXIS 381, at *13, 244 Wis. 2d 285, ¶ 13, 628 N.W.2d 438 (Wis. Ct. App. Apr. 17, 2001) (citations omitted) (unpublished).[2]

Resolving whether a promise is a guaranty for another's debt or an original undertaking is a fact-laden exercise that requires evaluating "all the evidence" concerning the agreement. *Mann*,

---

[2] Pursuant to Civil L. R. 7(j)(2), the unpublished opinions cited herein are appended to this brief as Exhibit A.

120 N.W.2d at 715. Whether the promise was unconditional,[3] when it was made,[4] the parties' post-promise conduct,[5] and whether the plaintiff invoked the defendant's duty to pay before any third party default occurred[6] all are among the germane factors. The nub of the analysis is identifying whether the promise to pay the third party's debt was contingent on the third party's default or nonperformance. *See id.* at 714 (promise was guaranty and covered by statute of frauds where defendant testified that it promised "payment of the commissions *if* [the third party] failed to pay them" (emphasis added)); *see also, e.g., Nelson*, 1982 Wisc. App. LEXIS 3488, at *4–5 ("To answer for the debt of another means that the guarantor is required to pay the debt upon breach of the primary promise of the other."). "If upon such consideration [of the relevant factors] the promise is in fact one to answer for the debt and default of another, it comes within the scope of the statute of frauds, otherwise it does not." *Mann*, 120 N.W.2d at 715. The undisputed evidence is that GTIF's undertaking to pay Ballard was not a guaranty for Hull's debt, which makes it lay outside the statute of frauds:

- Axelrod attested that GTIF agreed, unconditionally, to pay the fees Ballard incurred for the legal services it provided in connection with the investigations and arbitrations implicating GTIF, Hull, and others. (Axelrod Decl. ¶ 10, App. 0718); *see Barry Healthcare*, 2001 Wisc. App. LEXIS 381, at *14 (promise was not a guaranty where plaintiff rendered performance to a third party "at the defendant's request, and upon his absolute promise to pay" (quotation omitted)).

---

[3] *See, e.g., Barry Healthcare*, 2001 Wisc. App. LEXIS 381, at *14 (quoting *Champion v. Doty*, 31 Wis. 190 (1872)).

[4] *See, e.g., Brennan, Steil, Basting & MacDougall v. Colby*, 189 Wis. 2d 344, 349, 525 N.W.2d 273, 275 (Wis. Ct. App. 1994).

[5] *See, e.g., Great Revers FS Coop. v. Backman*, No. 82-025, 1982 Wisc. App. LEXIS 4221, at *1–2, 109 Wis. 2d 697, 327 N.W.2d 723 (Wis. Ct. App. Nov. 17, 1982).

[6] *See, e.g., Nelson v. Mauer*, Nos. 81-627, 81-630, 1982 Wisc. App. LEXIS 3488, at *4–5, 107 Wis. 2d 738, 321 N.W.2d 363 (Wis. Ct. App. Apr. 13, 1982).

- Ballard would not have undertaken the engagement without GTIF's agreement to pay. (Axelrod Decl. ¶ 10, App. 0718.) This indicates that GTIF's promise was made not "after-the-fact" of any default by Hull but "ancillary to the agreement retaining" Ballard. *Brennan*, 525 N.W.2d at 275.

- GTIF never disputed its obligation to pay Ballard's fees; rather, it rendered payment on multiple occasions. (Axelrod Decl. ¶ 13, App. 0718; App. 0834–36); *see Great Revers FS Coop.*, 1982 Wisc. App. LEXIS 4221, at *2–3 (defendant accepted and paid invoices submitted for purchases made by third party). Again, critically, there is no evidence that GTIF made these payments only after Hull first failed to pay. *Cf. Mann*, 120 N.W.2d at 714 (promise was guaranty where plaintiff "first tried to collect from" the third party "before trying to collect from the defendant").

- In addition to previously paying Ballard, GTIF affirmed and acknowledged that it owed Ballard's fees in its bankruptcy schedules. (Statement of Claim ¶ 11, App. 0394; App. 0446); *see Smith v. Doyle*, No. 84-743, 1985 Wisc. App. LEXIS 3914, at *4, 127 Wis. 2d 565, 379 N.W.2d 901 (Wis. Ct. App. Nov. 12, 1985) (summary judgment inappropriate where written stipulation agreeing to pay debt evidenced that the debt was enforceable).

These facts, none of which are refuted by any evidence adduced by the Committee, demonstrate that GTIF's agreement to pay Ballard was an original undertaking and, therefore, is enforceable and not barred by the statute of frauds.

Several examples from the case law bear this out. Consider *Brennan*, in which the court found an original undertaking to pay legal fees incurred on behalf of another. The defendant had arranged for plaintiff to represent a third party in connection with a foreclosure proceeding, made payments to the plaintiff for the legal services, and maintained contact with the plaintiff throughout the proceedings, all evidencing a primary obligation to pay that was not conditioned on the third party's default. *See* 525 N.W.2d at 275–76. The court contrasted *Cook & Franke, S.C. v. Meilman*, where the defendant was found to have made a guaranty after agreeing to pay the plaintiff law firm's outstanding fees arising from "the successful representation" of the defendant's friend in a criminal case that the firm completed "several years earlier." *Id.* (discussing 136 Wis. 2d 434, 436–37, 402 N.W.2d 361, 362–63 (Wis. Ct. App. 1987)). And in *Barry Healthcare*, it was enough for the court that the plaintiff "agreed to provide [healthcare] services" to a third party "based on an

oral promise made by [the defendant] to pay for these services," and that defendant did make some payments, to conclude that the promise was an original undertaking and not a guaranty. 2001 Wisc. App. LEXIS 381, at *2–3 & n.3, *14. Not only did this establish that the statute of frauds did not apply; the court imposed sanctions on the defendant for arguing otherwise. *Id.* at *17.

Similarly here, the evidence shows that GTIF agreed to pay Ballard for legal services it provided in connection with its engagement with Hull. There simply is nothing in the record suggesting that GTIF's agreement was conditioned on Hull's first defaulting on his own obligation to pay. The Bankruptcy Court erred in holding otherwise, and its decision should be reversed.

### B. The Committee is barred from invoking the statute of frauds in any event on grounds of promissory estoppel.

Even if GTIF's Agreement to pay Ballard constituted a guaranty otherwise within the statute of frauds, Ballard still would be entitled to enforce that Agreement on the basis of promissory estoppel. Promissory estoppel applies where "(1) the promise was one for which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) the promise did induce such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise." *Champine v. Milwaukee Cty.*, 2005 WI App 75, ¶ 18, 280 Wis. 2d 603, 618, 696 N.W.2d 245, 252 (Wis. Ct. App. 2005) (citation omitted).[7] Ballard adduced evidence establishing that GTIF's agreement to pay was one which GTIF should have anticipated would be relied upon, that Ballard would not have agreed to the engagement without GTIF's promise, and that Ballard reasonably and to its detriment relied on that Agreement in performing legal services and incurring fees. (*See, e.g.*, Axelrod Decl. ¶¶ 10–

---

[7] *Cf. Toulon v. Nagle*, 67 Wis. 2d 233, 247, 226 N.W.2d 480, 488 (Wis. 1975) (defendant could not invoke statute of frauds where party made an investment in and devoted substantial effort to new business pursuant to oral agreement).

12, App. 0718.) This record, at a minimum, creates an issue of fact as to whether Ballard can prevail on a theory of promissory estoppel, making summary judgment inappropriate. *See U.S. Oil Co. v. Midwest Auto Care Servs., Inc.*, 150 Wis. 2d 80, 89, 440 N.W.2d 825, 828 (Wis. Ct. App. 1989) (the first two elements of promissory estoppel are "questions for the fact finder").

The court below held that because Ballard did not recite the term "promissory estoppel" in its Statement of Claim, it forfeited the right to seek such relief.[8] (App. 1025–28.) But under Wisconsin law, estoppel is a *defense* to the statute of frauds and grounds for enforcing an oral promise that otherwise may be barred. *See In re Estate of Voss*, 20 Wis. 2d 238, 244, 121 N.W.2d 744, 748 (Wis. 1963); Wis. Stat. § 802.02(3) (recognizing estoppel as an affirmative defense). In other words, the claim for relief remains GTIF's Agreement, which was asserted in Ballard's Statement of Claim. (*See id.* ¶ 12, App. 0394.) It was entirely appropriate, therefore, that Ballard first argued promissory estoppel in response to the Committee's contention—made for the first time in its summary judgment motion—that the statute of frauds precluded Ballard's Claim. *See, e.g.*, *Wamser v. Bamberger*, 101 Wis. 2d 637, 639–45, 305 N.W.2d 158, 159–61 (Wis. Ct. App. 1981) (considering whether plaintiff successfully raised issue at summary judgment that defendant was estopped from asserting statute of frauds, the basis for defendant's motion).

Even if Ballard should have asserted promissory estoppel earlier in the proceedings, no waiver occurred. In addition to its evidentiary submissions, Ballard asserted in its Statement of Claim that GTIF agreed to pay Ballard's fees and that Ballard performed services, for GTIF's benefit, in reliance on that agreement—the necessary elements of promissory estoppel. (*See* Statement of Claim ¶ 17–18, App. 0396.) This precludes a finding of waiver. So long as the record

---

[8] This Court reviews a decision that a party waived an issue or argument de novo. *Baker v. Lindgren*, 856 F.3d 498, 506–07 (7th Cir. 2017).

otherwise supports a claim to relief, the party does not forfeit that relief merely because it fails to recite or name the claim in the pleadings. *See Whitehead v. AM Int'l*, 860 F. Supp. 1280, 1286 (N.D. Ill. 1994); *accord Rohler v. TRW, Inc.*, 576 F.2d 1260, 1264 (7th Cir. 1978) ("[I]t is not necessary that the plaintiff set forth the legal theory on which he relies if he sets forth sufficient factual allegations to state a claim showing that he is entitled to any relief which the court may grant." (citing Fed. R. Civ. P. 8(a)(2))); *Klein v. Kelly*, No. 79-068, 1980 Wisc. App. LEXIS 3494, at *3–4, 95 Wis. 2d 733, 289 N.W.2d 374 (Wis. Ct. App. Jan. 15, 1980) ("Where the facts constituting an estoppel appear in the complaint, it is not incumbent upon the plaintiff to specifically plead estoppel." (citation omitted)). And no waiver occurs particularly where, as here, the opposing party and trial court had ample opportunity to consider, argue against, and rule on the claim. *See Dresser Indus., Inc. v. Pyrrhus AG*, 936 F.2d 921, 928 (7th Cir. 1991) (failure to raise affirmative defense in pleadings is not waiver where it is raised later and parties argued it before the lower court). (App. 0855–57; App. 0914–24; App. 1025–28.) For these reasons, Ballard's failure to write "promissory estoppel" in its Statement of Claim—especially given that the issue was fully briefed by the parties, disputed at the hearing, and adjudicated by the court—did not constitute a waiver.

Accordingly, as with application of the statute of frauds in the first instance, the record at least creates an issue of fact with respect to whether promissory estoppel requires enforcement of GTIF's Agreement to pay Ballard's fees, even if it otherwise is barred under the statute of frauds. The Bankruptcy Court erred by holding at the summary judgment stage that promissory estoppel was unavailable to enforce that Agreement and its decision should be reversed.

## II. Hull is also entitled to indemnification for his legal fees and expenses from GTIF under Wisconsin law and under similar provisions of the Operating Agreement.

Even in the absence of GTIF's oral promise to pay Ballard's fees and expenses, GTIF still would be liable for those fees and expenses in light of its obligations to indemnify Hull that arise under Wisconsin law and provisions of GTIF's Operating Agreement. The lower court's decision holding otherwise was erroneous.[9]

Wisconsin law mandates that LLCs "indemnify or allow reasonable expenses to and pay liabilities of each member and, if management of the limited liability company is vested in one or more managers, of each manager, incurred with respect to a proceeding if that member or manager was a party to the proceeding in the capacity of a member or manager." Wis. Stat. § 183.0403(2). "Reasonable expenses" include attorneys' fees. Wis. Stat. §180.0850. Similarly, GTIF's Operating Agreement states that:[10]

> (b) <u>Advancement of Fees</u>. The Company shall advance legal expenses and other costs incurred by any such Indemnified Person as a result of any such action or proceeding under Section 6.10(a), provided that such Indemnified Person agrees to repay such amount if it shall ultimately be determined that such Indemnified Person is not entitled to be indemnified by the Company.

(Operating Agreement § 6.10(b), App. 0409.)[11]

---

[9] The Committee has separately asserted that regardless of any right by Hull to be indemnified for Ballard's fees and expenses, there is no right to indemnification for fees and expenses attributable to Bluepoint. (Comm. Sum. J. Br. at 11, App. 0470.) This only becomes relevant if the Agreement is not enforced, and in any event, the increment to Ballard's fees and expenses attributable solely to Bluepoint and unrelated to GTIF are minor.

[10] Any rights to indemnification under the Operating Agreement are in addition to, and not in substitution for, rights under Wisconsin law. As the Operating Agreement itself states, it does not displace any "other rights or defenses" to which a manager or member legally is entitled. (Operating Agreement § 6.10(a), App. 0409.)

[11] Section 6.10(a) nominally applies to hold managing members harmless for "any loss or damage suffered by the Company" as opposed to the members themselves. But it is clear that the provision also is intended to protect the managing members from losses they themselves suffer in connection with their corporate duties, and construing the language otherwise would lead to an

The federal government initiated investigations as to "possible securities law violations in connection with the solicitation of investments in and the operation of GTIF" and other funds. (Statement of Claim ¶¶ 4–5, App. 0393.) The two arbitration proceedings subsequently commenced also alleged claims arising from "the solicitation of investments in and the operations of GTIF." (Statement of Claim ¶ 6, App. 0393; App. 0507–608.) These proceedings implicated Hull in his capacity as a "member or manager" of GAM, which was a "member or manager" of GTIF, and related to actions he allegedly did or did not take within the scope of his corporate duties as to both companies. (*See id.*)

The Bankruptcy Court found that Hull was not entitled to indemnification because he was not a "member or manager" of GTIF, the positions referenced in Wisconsin's indemnification law and the Operating Agreement. (App. 1008.) Nevertheless, Hull managed GAM and, in that capacity, managed GTIF. (Resp. of Ballard Spahr ¶ 1, App. 0223; Operating Agreement § 6.2, App. 0405.) Under these facts, he is precisely who the Wisconsin statute and Operating Agreement were drafted to protect. The purpose of indemnification provisions is to protect corporate decision makers from exposure to expense and liability, so as to encourage individuals to serve in decision-making capacities. *See Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶ 55, 356 Wis. 2d 665, 690, 849 N.W.2d 693, 705–06 (Wis. 2014) ("Legislatures, including Wisconsin's, enacted statutory provisions requiring director indemnification because directors often were sued for

---

irrational result. Among other things: such a narrow reading does not square with the typical scope of indemnification, either generally or as specified by Wisconsin law, which, as set forth above, is expressly not displaced by the Operating Agreement; the advancement provision in Section 6.10(b) would be rendered superfluous, as the need for advancement arises in connection with claims asserted against a member; and the remainder of Section 6.10, which contemplates the company making payments to managers and members, also would be rendered superfluous. (*See* App. 0409.)

actions taken on behalf of corporations and that litigation was causing directors to resign and to refuse to serve on boards of directors. . . . The [increase in] director and officer liability . . . has led to the expansion of corporate laws which give added protection to corporate officials who act within the scope of their corporate duties." (quotation omitted)); *cf. Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561 (Del. 2002) ("The invariant policy of Delaware legislation on indemnification is to promote the desirable end that corporate officials will resist what they consider unjustified suits and claims, secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated." (quotation omitted)). This purpose is only served if such provisions protect the actual person performing the decision-making function and suffering losses therefrom.

Accordingly, it would be improper to construe Section 183.0403—enacted to shield individuals from liability when acting on behalf of corporate entities—to offer no protection here to the individual who in fact managed GTIF and was subject to legal proceedings as a result. *See Kalal v. Cir. Ct. for Dane Cty.*, 2004 WI 58, ¶¶ 44–45, 271 Wis. 2d 633, 662–63, 681 N.W.2d 110, 124–25 (Wis. 2004) ("[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect[;] a plain-meaning interpretation cannot contravene a textually or contextually manifest statutory purpose."); *see also Smith v. Capital One Bank (USA) N.A.*, 545 B.R. 249, 252–54 (E.D. Wis. 2016) (reversing summary judgment in part because bankruptcy court improperly construed statutory text in a way that was "not consistent with the purpose" of the law).

The same analysis applies to the indemnification provisions of the Operating Agreement. Although nominally GAM was a managing member of GTIF, GAM could only act in that capacity through its own President and CEO, Hull. Hull himself performed the managerial function. It is

the performance of this function that forms the basis for advancement and indemnification, whether by agreement or statute. To construe the indemnification provisions to exclude Hull from coverage, therefore, would be to frustrate those provisions' entire purpose, contravening long-accepted rules of contract interpretation. *See, e.g.*, *Isermann v. MBL Life Assur. Corp.*, 231 Wis. 2d 136, 153, 605 N.W.2d 210, 217 (Wis. Ct. App. 1999) ("Courts must read contracts to give a reasonable meaning to each provision and avoid a construction that renders portions of a contract meaningless."); *Eden Stone Co. v. Oakfield Stone Co.*, 166 Wis. 2d 105, 116, 479 N.W.2d 557, 562 (Wis. Ct. App. 1991) ("The ultimate aim of all contract interpretation is to ascertain the intent of the parties.").

Finally, construing Section 183.0403 and the Operating Agreement indemnification provisions to include Hull is in accord with longstanding equitable principles and common law. Wisconsin recognizes, for instance, the right to equitable indemnification where a party shows that "the obligation to pay should be shifted to one who in equity should bear the loss." *Estate of Kriefall v. Sizzler U.S. Franchise, Inc.*, 2012 WI 70, ¶ 43, 342 Wis. 2d 29, 57–58, 816 N.W.2d 853, 866 (Wis. 2012); *see also id.*, 816 N.W.2d at 865 ("No shared liability for the debt is required to support indemnification."). This doctrine exists in other jurisdictions, where courts have applied it to circumstances in which a corporate officer seeks indemnification for legal fees and expenses. *See, e.g.*, *Fletcher v. A. J. Indus., Inc.*, 266 Cal. App. 2d 313, 327 (Cal. Ct. App. 1968).

Ballard provided legal services to Hull with the concurrence of GTIF to defend against investigations and arbitrations concerning investments into and the operation of GTIF. Wisconsin law and the Operating Agreement, properly interpreted, protect individuals like Hull from personal liability for the expense of legal counsel in these circumstances. GTIF—the corporate entity at the center of the legal proceedings for which Ballard was engaged—should be responsible for the fees

and costs of Ballard that Hull incurred in his defense.[12] The Bankruptcy Court's decision otherwise was incorrect, and it should be reversed.[13]

### III. The Bankruptcy Court improperly decided disputed issues of material fact that should instead be resolved at trial.

For the reasons discussed above, this Court should reverse the decision of the Bankruptcy Court and direct the allowance of Ballard's Claim on any one or all of the grounds asserted. But even if this Court does not find an order allowing Ballard's Claim warranted on the present record, it nevertheless should reverse the Bankruptcy Court's summary judgment and remand the case for a determination of the material facts that remain in dispute. Such reversal is warranted because the Bankruptcy Court improperly assumed the role of the trier of fact, measuring the credibility and strength of the evidence, and rendered a decision on the merits of Ballard's Claim. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v.*

---

[12] Although the Bankruptcy Court did not reach the issue of Ballard's right to direct payment from GTIF, *see* App. 1008, the right of the party that actually suffered a loss to proceed directly against the party responsible for covering the loss is recognized elsewhere by Wisconsin law. *See* Wis. Stat. § 632.24 (tort claimant may proceed directly against tortfeasor's insurance carrier); *see also, e.g.*, *Emp'rs Health Ins. v. Gen. Cas. Co.*, 161 Wis. 2d 937, 955–56, 469 N.W.2d 172, 179–80 (Wis. 1991) (explaining the doctrine of equitable subrogation).

[13] The Committee also has argued that the particular claims asserted against Hull are excluded from the obligation to indemnify under both the Operating Agreement and Wisconsin law. (Comm. Summ. J. Br. at 9, App. 0468.) The Bankruptcy Court, given its disposition, did not reach this issue. Nevertheless, the right to advancement of legal fees and costs under indemnification provisions is not lost merely because uncovered claims are asserted. Indeed, Wisconsin law specifically contemplates *return* of advanced expenses if they arise in an action ultimately determined to involve an uncovered claim. *See* Wis. Stat. § 183.0403(4); *see also* Operating Agreement § 6.10(b), App. 0409. Were it otherwise, a corporate manager like Hull would be left with no right to a defense of even baseless charges of improper conduct. As set forth above, there has been no judicial determination of un-indemnified misconduct here.

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court's fact-finding was inappropriate, and its decision should be reversed.

The Bankruptcy Court's opinion is replete with assessments of credibility and conclusive findings of fact. For instance, the court ignored evidence of GTIF's Agreement to pay Ballard's fees and concluded that "only Hull owed Ballard Spahr for the invoices it provided on his behalf" and that GTIF's Agreement was, therefore, to pay Hull's "debt." (App. 1011.) Despite the testimony proffered in the Axelrod Declaration and other supporting documents, the court rejected Ballard's evidence because the testimony was "self-serving"[14] and omitted certain details the purported absence of which "sp[oke] volumes." (*See generally* App. 1013–16.) Similarly, the Bankruptcy Court improperly ruled that the timing of GTIF's agreement could only be "inferred" from the record, somehow determining this to weigh against Ballard's Claim. (*See id.*) Of course, on summary judgment, the Bankruptcy Court was obliged to credit such inference, like any inference from the evidence, in the manner most favorable to Ballard as the non-moving party. Perhaps most tellingly, the Bankruptcy Court found that the evidence "is at least as consistent with a promise [by GTIF] to guaranty payment as it is with a promise to be primarily liable" but nevertheless adopted the former view of the facts (*i.e.*, the view less favorable to the non-movant) and concluded as a matter of law that no fact-finder could decide otherwise. (*See* App. 1020.) Again, this is the opposite of what the law requires: if the evidence is capable of an interpretation supporting the position of the non-moving party, summary judgment is not proper.

In short, the Bankruptcy Court went out of its way to consider how the evidence could be construed against Ballard, and then proceeded to adopt that construction. But at summary

---

[14] The Seventh Circuit has been crystal clear that "the term 'self serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 n.1 (7th Cir. 2014).

judgment, the court must instead construe the evidence in the non-movant's favor and "give that party the benefit of genuine conflicts in the evidence and all reasonable favorable inferences." *Estate of Carman v. Tinkes*, 762 F.3d 565, 566 (7th Cir. 2014). When viewed accordingly, the record demonstrates that at a minimum, material issues of fact exist which must be resolved at trial. *See* Fed. R. Civ. P. 56(a). These issues include, by way of example:

- Whether GTIF agreed with Ballard to pay its legal fees, *Lakeside Foods, Inc. v. Liberty Mut. Fire Ins. Co.*, No. 2009AP1428, 2010 Wisc. App. LEXIS 562, at *25, 2010 WI App 120, ¶ 34, 329 Wis. 2d 270, 789 N.W.2d 754 (Wis. Ct. App. July 21, 2010) (the nature of an oral agreement "is a question for the jury");

- Whether that promise was a guaranty to satisfy any defaults on the part of Hull or an original undertaking, *Great Revers FS Coop.*, 1982 Wisc. App. LEXIS 4221, at *2 ("The existence of a special or original promise is a question of fact." (citing *Mann*, 120 N.W.2d at 714));

- Whether GTIF expected Ballard to rely on its promise to pay Ballard's fees, *U.S. Oil*, 440 N.W.2d at 828 (calling this issue a "question[] for the fact finder"); and

- Whether Ballard reasonably relied on that oral promise when it performed legal work for GTIF, *id.*; *see also W. Leather Lofts Condo. Ass'n v. Busalacchi*, No. 2009AP1451, 2010 Wisc. App. LEXIS 441, at *12, 2010 WI App 100, ¶ 22, 327 Wis. 2d 799, 788 N.W.2d 384 (Wis. Ct. App. June 15, 2010) (holding it is premature to consider the policy prong of promissory estoppel standard until "the facts in [the] case are determined by a jury").

The Committee offered no evidence to refute anything in the Axelrod Declaration or the other supporting documentation. Their strategy, at base, was to attack the credibility of Ballard's witness and draw their own inferences from the evidence. This plainly is insufficient to sustain a summary judgment ruling in their favor. "On summary judgment, a court may not make credibility determinations." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). And the Seventh Circuit "routinely" has found that "a nonmoving party's own affidavit can constitute affirmative evidence to defeat a summary judgment motion," especially where the testimony is based on the affiant's personal knowledge. *Payne*, 337 F.3d at 771–72 (collecting cases). This is especially true where the witness testimony is supported by other evidence in the record.

Although Ballard's evidence may be subject to dispute, "it is material evidence," and Ballard "should have had the opportunity to prove its theory." *R. S. Bennett & Co. v. Econ. Mech. Indus., Inc.*, 606 F.2d 182, 187 (7th Cir. 1979) (reversing summary judgment on promissory estoppel claim where evidence, when viewed in the non-movant's favor, created a genuine issue of fact). This Court should reverse the decision below and remand to afford Ballard the opportunity to prove its Claim.

## CONCLUSION

For the foregoing reasons, Ballard respectfully requests that the Court reverse the Bankruptcy Court's Order entering judgment for the Committee, and allow Ballard such other and further relief as the Court finds just and proper.

Dated: April 15, 2021                                      Respectfully submitted,

                                                     **BALLARD SPAHR LLP**

<u>/s/ *Michael R. McDonald*</u>

Michael R. McDonald                      Karla M. Vehrs, Esq.
1735 Market Street, 51st Floor        2000 IDS Center, 80 South 8th Street
Philadelphia, PA 19147                  Minneapolis, MN 55402-2119
Telephone: 215-665-8500              Telephone: 612-371-2449
Fax: 215-864-8999                         Fax: 612-371-3207
McDonaldM@ballardspahr.com       VehrsK@ballardspahr.com